**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CINCINNATI CASUALTY COMPANY, as subrogee of Nicholas and Radhika Baes, | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. |
| SHENZHEN LEPOWER INTERNATIONAL ELECTRONICS CO., LTD., | ) ) ) ) | |
| *Defendant.* | ) ) | |

**COMPLAINT**

NOW COMES Plaintiff, CINCINNATI CASUALTY COMPANY, as subrogee of Nicholas and Radhika Baes, by and through its attorneys, Grotefeld Hoffmann, and for its Complaint against Defendant, SHENZHEN LEPOWER INTERNATIONAL ELECTRONICS CO., LTD. states as follows:

**PARTIES AND GENERAL ALLEGATIONS**

1. At all times relevant, Cincinnati Insurance Company (hereinafter, "Cincinnati") was and is an insurance company, organized in the state of Ohio, with a principal place of business in Fairfield, Ohio.

2. At all times relevant, Nicholas and Radhika Baes (hereinafter, "Baes") were individuals who owned real and personal property located at 1932 W Erie Street, Chicago, Illinois 60622 (hereinafter, "Baes Residence").

3. At all times relevant, Baes held an Executive Capstone insurance policy, written by Cincinnati, bearing policy number H01 1052019 (hereinafter, "Subject Policy"). The Subject Policy is attached hereto as Exhibit 1.

1

4. At all times relevant, the Subject Policy provided coverage for, among other things, damage to the Baes Residence, and the personal property contained therein, caused by fire.

5. At all times relevant, Shenzhen Lepower Electronics Co., Ltd. is a foreign entity with a principal place of business at Building 9, Rongshen Huiyuan, No. 546 Longhua Industrial Road, Longhua District, Shenzhen, Guangdon 518110, China.

6. At all times relevant, Shenzhen Lepower Electronics Co., Ltd. has a headquarters in the United States, located at 13855 Ramona Avenue, Chino, California 91710.

7. At all times relevant, Shenzhen Lepower Electronics Co., Ltd. operated under the name "Lepower" (hereinafter, "Lepower").

8. At all times relevant, pursuant to its website, Lepower was in the business of design, production and sale of batteries, digital batteries, tool power batteries, and other peripheral products to consumers and businesses. A copy of Lepower's Website, Company Introduction page, is attached hereto as Exhibit 2.

https://www.lepower-battery.com/a/English/About_Us/Company_Introduction/



2

9.      Lepower was first established in 2012 and established a branch in the United States in 2013; Lepower started selling its products online in the United States in 2013.

10.     At all times relevant, Lepower has more than 50 employees in its United States and United Kingdom branches.

11.     At all times relevant, Lepower specifically employs "R&D, quality inspection, pre-sales, after-sales, marketing, design and planning teams." Exhibit 2.

12.     At all times relevant, Lepower holds itself out to be at the top of the field in manufacturing and selling batteries to consumers and businesses.

13.     At all times relevant, Lepower's interactive website is available to United States consumers at https://www.lepower-battery.com/index.html.

14.     At all times relevant, Lepower advertises its products on its website.

15.     At all times relevant, Lepower intended to market and knew its products were being marketed in the United States, including in Illinois.

16.     At all times relevant, Lepower provides two ways for the consumer to communicate with Lepower regarding its specific products, including through Whatsapp or the "Send Inquiry" option on the product listings.

17.     At all times relevant, in addition to selling directly to businesses, Lepower partners with sophisticated, "large international e-commerce platforms such as Amazon, eBay, Walmart, AliExpress, Newegg, and has now exported products to more than 50 countries," including the United States and has "established a strong brand influence." Exhibit 2.

18.     At all times relevant, Lepower uses sophisticated national retailers, including Amazon and Walmart, to send its products across the United States with the expectation the products would be purchased by consumers in the United States, including Illinois.

19.     At all times relevant, Lepower is a registered third-party seller on Amazon and sells its products, under the name of its sub-brand FirstPower, directly to consumers on Amazon. *See* Exhibit 3, p. 3.

20.     At all times relevant, due to the size of Amazon as a national platform used by consumers in all 50 states, by partnering with Amazon, Lepower knew it was directing its products into all 50 states, including Illinois.

21.     At all times relevant, Lepower-manufactured products are available for purchase by Illinois consumers and across the United States.

22.     At all times relevant, Lepower knew its products would be purchased by Illinois consumers.

23.     According to its website, in 2021, Lepower had "Annual sales of 280 million US dollars[.]" https://www.lepower-battery.com/a/English/Knowledge/FAQ/.

24.     At all times relevant, Lepower marketed and sold its products through its sub-brand FirstPower.



25.     At all times relevant, Lepower, by and through its brand FirstPower, designed and manufactured electronics goods, including replacement batteries made for "tools battery, such as Dewalt cordless series tools…" https://www.firstpowerr.com/about/

26. At all times relevant, Lepower, by and through its brand FirstPower, maintained a "store" on Amazon's United States' website, directly targeting customers in the United States, including Illinois.

27. At all times relevant, Lepower, by and through its brand FirstPower, made its products available for purchase through a link from FirstPower's website to Amazon, wherein a purchaser can click on the link and immediately be directed to FirstPower's store on Amazon's website.

28. Lepower, by and through its brand FirstPower, intentionally marketed its products in the United States, including Illinois. Specifically, Lepower controlled its United States based website and Amazon storefront, which knowingly reached customers in Illinois.

29. Lepower, by and through its brand FirstPower, intentionally marketed, advertised and sold its products in Illinois.

30. Lepower, by and through its brand FirstPower, designed its products in the United States and has a "large-scale warehouse" in California, promising "a fast shipping experience for you [customers]." https://www.firstpowerr.com/about/

31. Lepower, by and through its brand FirstPower, shipped its products directly from its warehouse in California to consumers in Illinois.

32. The incident which gives rise to this Complaint occurred at the Baes Residence.

## JURISDICTION AND VENUE

33. Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(2), as Cincinnati is a citizen of Ohio and Lepower is a Chinese corporation. Assuming *arguendo,* Lepower is considered a citizen of California due to having a principal place of business

in California, jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

34.     The amount in controversy exceeds $75,000.00, exclusive of interest, costs and fees.

35.     The Court has personal jurisdiction over Lepower because Lepower purposefully availed itself of the privilege of conducting business in Illinois and deliberately exploited the Illinois market by marketing, selling and distributing its products to Illinois citizens. Specifically, Lepower, by and through its brand FirstPower, and through its partnership with sophisticated national retailers, including Amazon, sold Baes, an Illinois resident, the battery at issue in this case. The claims in this action arise out of those activities because the battery marketed and sold, and which Lepower intended to reach Illinois consumers, started a fire resulting in damages at the Baes Residence. Additionally, Lepower derived revenue from the sales of products in Illinois and knowingly and intentionally reached Illinois consumers through its United States' website. Accordingly, Lepower should have reasonably anticipated being subject to the personal jurisdiction of this Court in Illinois as a result of its conduct and of conducting business in Illinois.

36.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that the Baes Residence, and a substantial part of the events, acts, and omissions giving rise to this claim occurred within the Northern District of Illinois, Eastern Division.

## FACTS

37.     At all relevant times, Lepower, designed, manufactured, assembled, tested, distributed and placed into the stream of commerce 3.5Ah Replacement Batteries, with said products being intended for use by consumers for the original purpose associated with using batteries.

38.     On April 5, 2020, Baes purchased a FirstPower-brand 3.5Ah Replacement Battery (hereinafter "Subject Battery") from the store on Amazon (hereinafter "Subject Battery").

Order date          Apr 5, 2020
Order #             112-9893193-2077833
Order total         $39.30 (1 item)

## Shipment details

FREE Prime Delivery

## Shipped
### Apr 9, 2020

 **FirstPower 3.5Ah Replacement Battery - Compatible for Dyson V6 Animal...**          $36.99

Qty: 1
Sold By: FirstPower

39.     Upon information and belief, the Subject Battery was designed, manufactured, assembled, tested, inspected, marketed, distributed, sold and placed into the stream of commerce by Defendant Lepower.

40.     At all times relevant, Lepower marketed the Subject Battery for use in a Dyson vacuum.

7

41. At all times relevant, Baes used the Subject Battery for its reasonably foreseeable and intended purpose to provide battery power to a Dyson vacuum.

42. At all times relevant, Lepower knew and intended the Subject Battery would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said batteries would be utilized.

43. Lepower designed, manufactured, assembled, tested, inspected, marketed, distributed and placed into the stream of commerce the aforesaid Subject Battery, including its component parts, in a dangerous and defective condition, which catastrophically failed due to a defect and/or malfunction.

44. Upon information and belief, and at all times relevant, the Subject Battery was not altered, modified or repaired in any way after its purchase and use by Baes.

45. On October 7, 2022, a sudden and calamitous fire occurred at the Baes Residence, causing significant smoke, fire and additional resultant damages to the real and personal property owned by Baes (hereinafter, "Subject Fire") and causing the Baes Residence to be uninhabitable, resulting in additional living expenses.

46. The investigation into the origin of the Subject Fire revealed it originated in a home office in the north-east corner of the basement of the Baes Residence.

47. Specifically, the closet in the home office was identified as the origin of the Subject Fire.

48. The Subject Battery was located in the closet of the home office, within the area of origin.

49.     Pre-fire, the Subject Battery had six (6) 18650 size batteries physically parallel to each other and electrically arranged in series. Additionally, the Subject Battery had a printed circuit board (hereinafter, "PCB") mounted onto the battery pack.

50.     Post-fire inspection revealed the Subject Battery packs had short tabs which were spot welded to the battery terminals; however, there were no tab extensions to connect the Subject Battery pack to the PCB.

51.     Post-fire inspection further revealed the Subject Battery's wires were soldered to the PCB and those wires were subsequently soldered to the battery tabs at the battery terminals.

52.     The proper design and manufacture of 18650 batteries would not allow for cells to be soldered to other cells; cells should be welded with a lead on its terminal and then soldered with wire to other leads.

53.     Failure to adhere to this proper design and manufacturing process may cause damage to a component, such as separator and insulation, by heat generation. Further, proper design and manufacturing processes mandate no application of heat to a partial area of a battery. Solder present on the Subject Battery establishes significant heat was applied directly to the Subject Battery

54.     The fire at the Baes Residence was directly and proximately caused by the Subject Battery. Specifically, the design and construction of the Subject Battery pack was such that it required wires to be soldered to the leads of the batteries.

55.     Soldering wires to the battery leads required the introduction of heat onto the battery terminals, which is inherently unsafe, dangerous and should be avoided. The heat from the soldering process degraded the Subject Battery, which ultimately resulted in a catastrophic failure and caused the Subject Fire.

## COUNT I: STRICT PRODUCT LIABILITY

56. Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs 1 through 55 of this Complaint, inclusive, as though fully set forth herein this Count I.

57. On information and belief, Lepower designed, marketed, distributed, and/or sold the Subject Battery.

58. At the time the Subject Battery left Lepower's possession and control, it was defective, unsafe, and unreasonably dangerous.

59. At all times relevant, Baes used the Subject Battery in a manner reasonably foreseeable to Lepower.

60. On information and belief, and at all times relevant, Lepower knew or should have known that the Subject Battery was defective, unsafe, and unreasonably dangerous for its normal and intended use.

61. On information and belief, and at all times prior to the fire on or about October 7, 2022, the Subject Battery was unchanged, not modified, and used for its intended purpose of providing battery charge to a Dyson brand vacuum in a reasonably foreseeable manner.

62. On information and belief, the Subject Battery was in a condition unknown to Baes, which was defective, unsafe, and unreasonably dangerous in light of its foreseeable and intended uses in that:

   a. It was designed, manufactured and/or distributed with improper materials, including wires soldered to the leads of the batteries.

   b. It was designed, manufactured and/or distributed for consumer use with materials and component parts, including its wiring, that were insufficient for such use;

   c. It was designed, manufactured and/or distributed in such a way to allow heat to breach the batteries, contact the internal electrical components, and cause an overheating event to occur;

10

d. It was designed, manufactured and/or distributed in such a way as to allow internal overheating;

e. It was designed, manufactured and/or distributed with combustible components internal to the product that were prone to ignite a fire if subjected to overheating;

f. The Subject Battery failed to incorporate any safety device for the internal electrical components to prevent an overheating event from occurring;

g. The Subject Battery was designed, manufactured and/or distributed without adequate warning to the consumer regarding the risk that the Subject Battery could overheat, arc, and/or ignite a fire;

h. The Subject Battery was designed, manufactured and/or distributed without any warning contained on the Subject Battery regarding the risk that the Subject Battery could overheat and/or ignite a fire;

i. The Subject Battery was otherwise designed, manufactured and/or distributed in such a way as to provide the intended user with a dangerous and defective product.

63. On October 7, 2022, as a direct and proximate result of the aforementioned defective conditions of the Subject Battery, it suddenly and catastrophically failed, causing a fire to ignite within the Baes Residence.

64. On October 7, 2022, as a direct and proximate result of the aforementioned defective conditions of the Subject Battery, the Subject Fire occurred, and certain real and other personal property belonging to Baes was destroyed or damaged and caused Baes to incur additional living expenses.

65. Pursuant to the Subject Policy issued to Baes, Cincinnati paid to, or on behalf of Baes, an amount of $1,713,101.50 as indemnification and reimbursement for the damages suffered by Baes to their real and personal property due to the aforementioned fire and for additional living expenses.

11

66. In consideration of said payments, and in equity, Cincinnati became a *bona fide* subrogee of Baes, and is subrogated to all rights, claims and interests that its insured may have against any person or entity responsible for this occurrence and resulting damage.

**WHEREFORE,** CINCINNATI CASUALTY COMPANY, as subrogee of Nicholas and Radhika Baes, respectfully requests judgment be entered in its favor against Defendant SHENZHEN LEPOWER INTERNATIONAL ELECTRONICS CO., LTD., in an amount of $1,713,101.50, plus interest, costs, fees and other further relief this Court deems equitable and just.

## COUNT II: NEGLIGENCE

67. Plaintiff realleges, repeats, and incorporates by reference Paragraphs 1 through 66 of this Complaint, inclusive as though fully set forth herein this Count II.

68. At all times pertinent hereto, Lepower owed a duty to exercise reasonable care in the design, manufacture, assembly, testing, inspection and/or distribution of the Subject Battery for the safety of consumers, including Baes and their real and personal property.

69. Notwithstanding said duty, Lepower, by and through its agents and employees, breached its duty through one or more of the following acts or omissions:

  a. Carelessly and negligently failed to design, manufacture, inspect, assemble, distribute, and/or market a properly functioning and defect free Subject Battery, which after reasonable and foreseeable use, malfunctioned and catastrophically failed;

  b. Carelessly and negligently failed to properly design, manufacture, inspect, assemble, distribute, and/or market the Subject Battery with materials sufficient for its ordinary and intended use;

  c. Carelessly and negligently failed to properly inspect and test the component parts of the Subject Battery to ensure all component parts were in a safe condition and free of material defects, before introducing the Subject Battery into the stream of commerce;

12

    d.   Carelessly and negligently designed and distributed the Subject Battery in such a way to allow overheating and a fire to occur within the Subject Battery during its normal and foreseeable use;

    e.   Carelessly and negligently failed to provide adequate warning and instructions with respect to the Subject Battery, which rendered it defective and unreasonably dangerous;

    f.   Carelessly and negligently designed the Subject Battery with combustible components that could ignite as a result of overheating; and

    g.   Carelessly and negligently designed, manufactured, inspected, assembled, distributed and/or marketed the Subject Battery in a defective condition rendering it hazardous for its contemplated and intended use.

70.    On October 7, 2022, as a direct and proximate result of the aforementioned negligent acts and omissions of Lepower, the Subject Battery suddenly and catastrophically failed, causing the Subject Fire to ignite within the Baes Residence, causing significant damage to real and personal property belonging to Baes and the incurrence of additional living expenses.

71.    Pursuant to the Subject Policy issued to Baes, Cincinnati paid to, or on behalf of Baes, an amount of $1,713,101.50 as indemnification and reimbursement for the damages suffered by Baes to their real and personal property due to the aforementioned fire and for additional living expenses.

72.    In consideration of said payments, and in equity, Cincinnati became a *bona fide* subrogee of Baes, and is subrogated to all rights, claims and interests that its insured may have against any person or entity responsible for this occurrence and resulting damage.

**WHEREFORE,** CINCINNATI CASUALTY COMPANY, as subrogee of Nicholas and Radhika Baes, respectfully requests judgment be entered in its favor against Defendant SHENZHEN LEPOWER INTERNATIONAL ELECTRONICS CO., LTD. in an amount $1,713,101.50, plus interest, costs, fees and other further relief this Court deems equitable and just.

13

## COUNT III: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

73. Plaintiff repeats, realleges, and incorporates by reference Paragraphs 1 through 72 of this Complaint, inclusive, as though fully set forth herein this Count III.

74. At all times relevant, Lepower designed, assembled, manufactured, distributed, marketed, built, tested, and/or sold batteries, including the Subject Battery.

75. Lepower knew or had reason to know that the purchaser and user of Subject Battery would rely on the skill and judgment of Defendant Lepower in their purchase and use of the product.

76. Lepower and/or its employees, subsidiaries, and agents impliedly warranted that the Subject Battery was fit for the particular purpose for which it was intended.

77. At all times relevant, the Subject Battery was not fit for its intended purpose and caused a fire at the Baes Residence.

78. At all relevant times, Baes used the Subject Battery in a foreseeable and ordinary manner and yet sustained the damages described herein due to the defects and unmerchantable qualities of the Subject Battery.

79. On October 7, 2022, as a direct and proximate result of the aforementioned breach of warranty by Defendant Lepower, the Subject Battery suddenly and catastrophically failed, causing the Subject Fire to ignite within the Baes Residence causing significant damage to real and personal property belonging to Baes and the incurrence of additional living expenses.

80. Pursuant to the Subject Policy issued to Baes, Cincinnati paid to, or on behalf of, , an amount of $1,713,101.50 as indemnification and reimbursement for the damages suffered by Baes to their real and personal property due to the aforementioned fire as well as additional living expenses.

81.     In consideration of said payments, and in equity, Cincinnati became a *bona fide* subrogee of Baes, and is subrogated to all rights, claims and interests that its insured may have against any person or entity responsible for this occurrence and resulting damage.

**WHEREFORE,** CINCINNATI CASUALTY COMPANY, as subrogee of Nicholas and Radhika Baes, respectfully requests judgment be entered in its favor against Defendant SHENZHEN LEPOWER INTERNATIONAL ELECTRONICS CO., LTD., in an amount of $1,713,101.50, plus interest, costs, fees and other further relief this Court deems equitable and just.

Respectfully Submitted,

**CINCINNATI CASUALTY COMPANY**,
as subrogee of Nicholas and Radhika Baes

By:     */s/ Amy L. Dvorak*

Amy L. Dvorak (6282792)
GROTEFELD HOFFMANN, LLP
311 South Wacker, Suite 1500
Chicago, Illinois 60606
Ph: (312) 551-0200
Direct Dial:  (312) 601-2387
Cellular: (312) 550-6335
Direct Facsimile:  (312) 601-2402
E-Mail:  advorak@ghlaw-llp.com

Anna T. Ratterman (6349628)
GROTEFELD HOFFMANN, LLP
407 South Third Street, Suite 200
Geneva, Illinois 60134
Ph: (630) 262-1112
Direct Dial:  (630) 457-2028
Facsimile: (312) 601-2402
E-Mail:  aratterman@ghlaw-llp.com